The Full Commission has reviewed the prior Opinion and Award based upon the entire record of the proceedings before Deputy Commissioner Theresa B. Stephenson and the briefs and arguments on appeal. The appealing party has not shown good ground to receive further evidence or to amend the holding of the Deputy Commissioner. Accordingly, the Full Commission affirms and adopts the Deputy Commissioners decision and enters the following Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing on 29 January 1999 and subsequent thereto and in a Pre-Trial Agreement submitted into evidence as Stipulated Exhibit #1, as:
 STIPULATIONS
1. All parties are properly before the North Carolina Industrial Commission and are subject to and bound by the provisions of the North Carolina Workers Compensation Act.
2. An employment relationship existed between plaintiff-employee and defendant-employer on 3 October 1997.
3. Hartford Mutual Insurance Company is the carrier at risk.
4. Plaintiffs average weekly wage is $251.37, yielding a compensation rate of $167.59 per week, subject to confirmation by an Industrial Commission Form 22.
5. Plaintiffs medicals regarding this claim are admitted into evidence as Stipulated Exhibit #2, as well as the affidavit of Dr. Harold B. Kernodle, Jr., received at the Commission 20 July 1999.
6. A videotape of the winding machine operator position is admitted into evidence as Stipulated Exhibit #3.
7. A surveillance video is admitted into evidence as Stipulated Exhibit #4.
8. An Industrial Commission Form 22, as well as Forms 18, 33 and 33R, are admitted into evidence as Stipulated Exhibit #5.
9. The issues to be determined are whether plaintiff sustained a compensable occupational disease; and, if so, what, if any, benefits is she entitled.
 ***********
Based upon the entire record of evidence, the Full Commission enters the following:
 FINDINGS OF FACT
1. On 3 October 1997, plaintiff was a 54-year old female employed by defendant-employer as a cone winder. This position required plaintiff to place bobbins of yarn beneath a machine, place cones on, run yarn while grinding it and tilling the cone. These duties required the use of both hands and plaintiff performed the job eight (8) hours per day, five (5) days a week. Plaintiff ran sixty-four (64) machines on an average, but sometimes rose as high as ninety-six (96). Plaintiff had been employed in this capacity since May 1994.
2. Plaintiff first sought treatment from Alamance Family Practice on 4 October 1997, but her primary complaint was right shoulder pain. At plaintiffs visit to Dr. Ernest B. Eason on 28 October 1997, plaintiffs main complaint was pain across her shoulders. Dr. Easons diagnosis was bursitis and degenerative joint disease.
3. At plaintiffs 12 December 1997 visit to Dr. Meindert A. Niemyer at Alamance Family Practice she complained the pain in her joints seemed to be moving and she now had discomfort in her left hip and left knee. Plaintiff also mentioned discomfort in her hands for the first time. The diagnosis was migratory arthritis.
4. At the 21 January 1998 doctors visit plaintiff reported swelling above her wrist for the first time. When plaintiff did not improve with medication she was referred to Dr. Wallace Kernodle, Jr., a rheumatologist.
5. Plaintiff first saw Dr. Wallace Kernodle, Jr. on 2 February 1998. Plaintiff had numbness in both hands and left wrist swelling. Plaintiff also complained of her elbows hurting, shoulder pain and her left knee bothering her. A Tinels test was positive. Nerve conduction studies revealed moderately severe bilateral carpal tunnel syndrome. Dr. Wallace Kernodle gave plaintiff a note with her diagnosis of carpal tunnel syndrome, which plaintiff presented to defendant-employer.
6. Sometime after 13 February 1998 but prior to the end of February, plaintiff told Judy Boren, defendant-employers office manager, plaintiffs hand pain was job related. Plaintiff was unable to work due to hand pain 24 February 1998 through 27 February 1998. On 27 February 1998 defendant-employer informed plaintiff she was fired. Plaintiffs last day of work at defendant-employer was 23 February 1998.
7. Although defendant-employer maintains plaintiffs firing was due to downsizing, the evidence of record demonstrates that plaintiff was fired due to her problems with her hands and alleged occupational injury.
8. Dr. Wallace Kernodle referred plaintiff to Dr. Harold Kernodle, an orthopedist, who plaintiff first visited on 13 March 1998. At that time plaintiff complained of pain in her wrists and numbness and tingling in the median nerve in the fingers of both hands. Plaintiff reported to Dr. Harold Kernodle that work aggravated her hands.
9. Plaintiff underwent a bilateral carpal tunnel release on 20 May 1998. Plaintiff tolerated the procedure well and by 17 July 1998 she was relatively asymptomatic in the right hand. However, plaintiffs left hand had some hyperthesia in her median nerve innervated fingers.
10. Plaintiff continued to improve and last saw Dr. Harold Kernodle on 2 December 1998. At that time plaintiffs primary complaint involved her shoulders, not her wrists. Dr. Harold Kernodle rated plaintiff with a zero percent (0%) permanent partial disability rating to her hands since she had no complaints and the surgery was successful.
11. Plaintiff has not worked or earned wages since her dismissal by defendant-employer on 27 February 1998. However, the greater weight of the evidence indicates that plaintiffs reasons for not working after 22 October 1998 were unrelated to her hands. Plaintiff did not complain about her hands/wrists to Dr. Harold Kernodle on 22 October 1998 and after, but instead focused on her shoulders. Plaintiff did not engage in any job search after 22 October 1998.
12. Plaintiff was awarded Social Security disability for rheumatoid arthritis in the amount of $691.00 per month. The greater weight of the evidence is that this arthritis is not related to plaintiffs employment with defendant-employer. Plaintiffs carpal tunnel syndrome had improved by 22 October 1998 and no longer restricted her from employment.
13. As a result of plaintiffs work with defendant-employer, plaintiff sustained bilateral carpal tunnel syndrome.
14. Plaintiffs employment with defendant-employer placed plaintiff at an increased risk of developing carpal tunnel syndrome than members of the general public not so employed.
15. Plaintiffs average weekly wage is $251.37, yielding a compensation rate of $167.59 per week, pursuant to the Industrial Commission Form 22, stipulated Exhibit #5.
 ***********
Based upon the foregoing findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. Plaintiffs bilateral carpal tunnel syndrome is due to causes and conditions characteristic of and peculiar to her employment, is not an ordinary disease of life to which the general public not so employed is equally exposed, and is, therefore, an occupational disease. N.C. Gen. Stat. 97-53(13).
2. As a result of plaintiffs contraction of carpal tunnel syndrome, plaintiff is entitled to temporary total disability from 28 February 1998 through 22 October 1998 at her compensation rate of $167.59 per week. N.C. Gen. Stat. 97-29.
3. Plaintiff is entitled to have defendants provide all medical treatment arising from her bilateral carpal tunnel syndrome to the extent it tends to effect a cure, give relief or lessen plaintiffs disability. N.C. Gen. Stat. 97-25; 97-25.1.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following:
 AWARD
1. Subject to a reasonable attorney fee approved herein, defendants shall pay temporary total disability to plaintiff at her compensation rate of $167.59 from 28 February 1998 through 22 October 1998. Said amount has accrued and shall be payable in a lump sum.
2. Defendants shall pay all medical expenses incurred by plaintiff as a result of her occupational disease, bilateral carpal tunnel syndrome, for so long as such examinations, evaluations and treatments may reasonably be required to effect a cure, give relief or lessen plaintiffs disability when bills for the same shall have been submitted to the Industrial Commission pursuant to approved Industrial Commission procedure.
3. A reasonable attorneys award of twenty-five percent (25%) of the compensation due plaintiff under Paragraph 1 of this AWARD is approved for plaintiffs counsel and shall be deducted from that sum and payable directly to plaintiffs counsel.
4. Defendants shall pay the costs.
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER
CONCURRING:
S/_____________ THOMAS J. BOLCH COMMISSIONER
S/_______________ DIANNE C. SELLERS COMMISSIONER